IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STRANDEX CORPORATION,

                  Plaintiff,                  ORDER

v.

                                          10-cv-705-slc

PREMIUM COMPOSITES, LLC,

                  Defendant.

---

In an order entered on March 1, 2011, I granted plaintiff Strandex Corporation's motion for a preliminary injunction and required defendant Premium Composites, LLC to turn over all of the Strandex tooling in its or any third-party's possession immediately after Strandex posted a security bond pursuant to Fed. R. Civ. P. 65(c). Dkt. 27. I gave the parties until March 14, 2011 to submit briefs and evidentiary materials regarding the appropriate amount for the bond. Dkt. 30.

The parties agree that the value of the dies at issue is $130,000. Strandex recommends that the court set a bond in the amount of $25,000 to $50,000 given the strong likelihood that it will prevail in this case and the fact that Premium is not running any product on the dies at this time. Premium asserts that the bond should be set at a minimum of $555,988 because it projects that, with respect to the PC Hand Railing Dies, it will have a net revenue loss of $425,988 for 2011 and a total net revenue loss of $7,572,743 for 2011 through 2016.

The purpose of the security requirement in Rule 65(c) is to protect the restrained party— here, Premium—from damages that it would incur in the event that the injunction was wrongfully issued. *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002); *Citizens for a Better Environment v. Village of Elm Grove, Wis.*, 472 F. Supp. 1183, 1184 (E.D. Wis. 1979) (citations omitted). The amount of the bond is left to the discretion of the court. *Ty*, 292 F.3d at 516; *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141-42 (7th Cir. 1994). The Court of Appeals for the Seventh Circuit has instructed that "district courts should

err on the high side" when setting bond because an error in setting the bond too high is not serious and "an error in the other direction produces irreparable injury because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000); *see also Habitat Educ. Center v. U.S. Forest Service*, 607 F.3d 453, 456 (7th Cir. 2010) (reemphasizing and citing same).

However, a court cannot simply set the bond at whatever high number it thinks appropriate. *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007). Where the bond is both higher than necessary and beyond the plaintiff's financial capacity, it inflicts irreparable harm without justification. *Habitat*, 607 F.3d at 456. Reasons must support the number chosen so that a reviewing court can determine whether the number "was within the range of options from which one could expect a reasonable trial judge to select." *Gateway*, 35 F.3d at 1141-42 (citation omitted).

Given it is undisputed that the dies are worth $130,000 to Premium, it is reasonable to set the bond at that amount at a minimum. However, setting the bond to account for Premium's potential lost revenues is a harder question. As discussed in the preliminary injunction order, the testimony at the preliminary injunction hearing revealed that Premium has not run any product on the Strandex dies since the termination of the licensing agreement and has no current orders for the Strandex product. In an declaration filed with Premium's brief on the bond amount, Troy Burgess (Premium's General Manager) avers that the projected net revenue loss of $425,998 for 2011 is "based on *tentative* orders received from Premium customers for 2011" and the projected $7,572,743 revenue loss for 2011 to 2016 is based on "projected orders *expected* to be received during the course of 2011 to 2016 based on the previous six-year order history with Premium customers." Dkt. 34, ¶ 10.

It is unclear what Burgess means by "tentative orders." The common definition of the term is "not fully worked out or developed." *Merriam-Webster Dictionary*, accessed at http://

merriam-websterscollegiate.com/dictionary/tentative (visited Mar. 15, 2011). Burgess offers no information on who he is negotiating with or the status of these tentative orders. Given this, I am reluctant to require Strandex to secure a bond to cover such a speculative figure.

However, realizing that it is better to err on the side of setting a bond too high than too low, I will account for some potential lost revenue in the unlikely event that Premium should prevail in this lawsuit. It was made clear at the hearing and Burgess avers that without the dies, Premium probably will have to shut its doors within 3 to 6 months. Therefore, to account for the value of the dies and three months of potential revenue, I am setting the injunction bond at $240,000.[1]

ORDER

IT IS ORDERED that as security for the preliminary injunction granted in this court's March 1, 2011 Opinion and Order, plaintiff Strandex Corporation shall provide security in the amount of $240,000 pursuant to Fed. R. Civ. P. 65(c). Strandex shall submit proof of security on or before March 28, 2011.

Entered this 17th day of March, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

---

[1] As a rough estimate of 3 months lost revenue, I divided the projected yearly loss of $425,988 by four. I also note that because I have ordered Strandex not to destroy the dies until the completion of this case, it is unlikely that Premium would have to replace the dies; they could be returned unharmed to Premium in the event it prevails in this lawsuit. Under that scenario, the $130,000 would be available to cover any other lost revenue that Premium could prove that it actually sustained in the interim.